■ JENNIE T. SEGRETI, Individually and as Administratrix of the Estate of ANTHONY J. SEGRETI, Deceased, Appellant, v PUTNAM COMMUNITY HOSPITAL et al., Respondents. — In a medical malpractice action, plaintiff appeals from a judgment of the Supreme Court, Putnam County (Nastasi, J.), entered Decem-

ber 30, 1980, which dismissed the complaint, after a jury verdict in favor of defendant Chang. Judgment reversed, on the law, without costs or disbursements, and matter remitted to the Supreme Court, Putnam County, for a new trial as to defendant Chang. On January 16, 1976 Anthony Segreti died in his car en route home after having just been X-rayed at the Putnam Community Hospital pursuant to Dr. Chang's suggestion. Although no autopsy was performed, the death certificate of the New York State Department of Health indicated that the immediate cause of death was "coronary occlusion". Dr. Paul Chang first saw decedent in his office in October, 1970. Decedent revealed that he was experiencing a great deal of tension at work and, with respect to his family history, that his father had died of a coronary at the age of 54 and his mother was suffering from hypertension. Dr. Chang performed an electrocardiogram which revealed both premature ventricular and arterial contractions. Premature contractions can be caused by stress or anxiety or may result from the use of such stimulants as caffeine or tobacco. Chang prescribed a mild tranquilizer at that time. On December 16, 1970 Dr. Chang made the following diagnosis: "abnormal electrocardiogram, frequent p.v.c.'s, no organic heart disease". Segreti did not visit Dr. Chang again until October 20, 1971, at which time he complained of pain in the precordium and substernum regions. Based upon his observations to this point, Dr. Chang reached the opinion that heart disease was one of a number of possibilities to explain Segreti's ailment. He thereupon prescribed Valium as a mild tranquilizer, and Sorbitrate, a medication designed to dilate the coronary artery vessels in order to increase the blood flow. Shortly thereafter, Dr. Chang recommended that Segreti see a cardiologist for the purpose of submitting to a coronary angiogram. No such test was performed, however. Upon Segreti's next visit, in April, 1972, Dr. Chang prescribed Enderal, a medication used for controlling angina, blood pressure and irregular heartbeats. It was also determined that Segreti had an abnormally high cholesterol level. In June, 1972 Dr. Chang performed a preoperative electrocardiogram and cleared Segreti for knee surgery. Upon the occasion of Segreti's subsequent hospitalization in January, 1974, Dr. Chang initially refused to clear his patient for further knee surgery due to abnormal wave patterns on the cardiogram. Even at that time, however, he did not consider Segreti to be suffering from heart disease. In November, 1974, Segreti complained of pressure in his chest and left arm and informed Dr. Chang that his mother had recently died of a massive coronary. Although Dr. Chang became increasingly concerned about Segreti's complaints of chest pains, none of the other common symptoms of heart disease, such as weakness, sensations of heat or cold, sweat or difficulties in breathing were present. An electrocardiogram performed at that time revealed no evidence of myocardial infarction or any additional maladies. Dr. Chang next saw Segreti on January 10, 1976. As per Dr. Chang's testimony, an electrocardiogram performed on that day revealed Segreti's heart rate to be normal. There was no evidence of heart damage or ischemia. Dr. Chang prescribed that Segreti resume his intake of Atromid-S in order to alleviate his elevated cholesterol level. Segreti telephoned Dr. Chang from work on January 16, 1976, complaining of aches and burning sensations in his upper chest, shoulder blades and back. Although Dr. Chang later admitted the possibility of heart disease, he noted that there were no typical symptoms of coronary artery disease. He thereupon instructed Segreti to leave work and drive to Putnam Community Hospital, a distance of some 30 miles, for an X ray of the cervical and dorsal spine. After submitting to the X rays Segreti returned to his car to make the drive home. His car was observed rolling off the roadway a short distance from the hospital. Segreti was rushed to the hospital's emergency room but was pronounced dead on arrival. At the conclusion of plaintiff's case, the hospital's motion for an order dismiss-

ing the complaint for failure to prove a prima facie case against it was granted and the hospital was dismissed as a party defendant. The jury rendered a 5 to 1 verdict in favor of defendant Chang, finding "no conclusive evidence of malpractice". Without passing on the merits of plaintiff's claim, certain errors committed by the trial court were unduly prejudicial to plaintiff and warrant a reversal of the judgment in favor of Dr. Chang. The court erred in redacting those portions of Segreti's 1972 and 1974 hospital records relating to his medical history of "coronary insufficiency". The subject portions consist, essentially, of the decedent's medical history recorded by Dr. Julian Glatt, his treating physician with respect to the knee injury. It is stated in both records that Segreti was under treatment for coronary disease by Dr. Chang. Insofar as Segreti's medical history of cardiac problems was essential for the treatment of a patient who presented a coronary problem as well as a knee injury, it is admissible under CPLR 4518 (subd [a]) as an essential part of the hospital record (see *Williams v Alexander*, 309 NY 283). The redacted portions of the hospital record were clearly relevant to the issue of whether defendant Chang was on notice that Segreti had a coronary condition and were improperly excluded from the jury's consideration. The trial court also erred in improperly curtailing plaintiff's examination of defendant Chang as a hostile and an expert witness. As an adverse party, Dr. Chang was a hostile witness subject to cross-examination when called to the stand by plaintiff (*Gonzalez v Medina*, 69 AD2d 14). The court advised plaintiff's counsel that he would be permitted to ask Dr. Chang only those questions which related specifically to Segreti's condition, as opposed to the general, searching questions he was asking in an attempt to ascertain what the witness knew concerning electrocardiograms, p.v.c.'s and various stress tests. The requirement that counsel frame all of his questions with reference to Dr. Chang's specific findings regarding Segreti was imposed throughout this witness' testimony. The trial court improperly ruled that Dr. Chang should not be required to testify concerning whether the procedures he followed constituted proper medical practice or not. It was prejudicial error for the trial court to so prevent plaintiff's counsel from leading and cross-examining Dr. Chang as a hostile witness as to hold him bound by the latter's answers (see *Matter of Arlene W. v Robert D.*, 36 AD2d 455). Plaintiff's counsel was, moreover, advised by the court that he would not, under any circumstances, be permitted to make Dr. Chang his expert. It is well settled that a plaintiff in a medical malpractice action may call as a witness the doctor against whom she brought the action and question him as a medical expert (see *McDermott v Manhattan Eye, Ear & Throat Hosp.*, 15 NY2d 20). Notwithstanding the fact that plaintiff was able to employ other expert witnesses besides Dr. Chang, the court's ruling unjustly precluded her from establishing her case in a manner most advantageous to herself. In view of the substantial prejudice effected by these errors upon plaintiff's case, the matter must be remanded for a new trial as to the claim asserted against Dr. Chang. Insofar as no evidence was produced at trial to the effect that defendant hospital was negligent in carrying out the orders of Segreti's treating physician, or that it, in any way, failed to conduct itself in accordance with the standard of care prevailing in that and similar localities, Putnam Community Hospital was properly dismissed as a party defendant. We have considered plaintiff's other contentions and find them to be without merit. Damiani, J. P., Lazer, Mangano and Gibbons, JJ., concur.